UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-01501-WYD

KIMBERLY B. MEDINA,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

I.      INTRODUCTION

      THIS MATTER is before the Court on review of the Commissioner's decision that

denied Plaintiff's applications for disability insurance benefits and supplemental security

income pursuant to Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C.

§§ 401-33 and 1381-83.  For the reasons stated below, I find that this case should be

reversed and remanded for further factfinding.  In so finding, I note that even the

Commissioner acknowledges that a remand is appropriate for additional administrative

proceedings related to findings of fact that were not resolved by the ALJ and because

the administrative record was not adequately developed.  (Def.'s Resp. Br. at 5, 6, 9.)

II.     BACKGROUND

      Plaintiff filed applications for benefits in February 2005, alleging disability as of

November 1, 2002 due to lumbar spine disorders ("severe back problems"), migraine

headaches, ovarian cyst, asthma, chronic pain, depression and obesity.  (Administrative

Record [R."] 20, 22, 79-81, 94.)  Plaintiff was born on July 25, 1971 and was 31 years old at the time of the alleged disability onset date.  (*Id.* 27.)

The Colorado Disability Determination Services denied Plaintiff's claims at the initial determination stage.  (R. 20, 52-55.)  An Administrative Law Judge ["ALJ"] held a hearing on August 8, 2006.  (*Id.* 840-66.)  In a decision dated August 14, 2006, the ALJ concluded at step five of the sequential evaluation that Plaintiff was not disabled within the meaning of the Act.  (*Id.* 20-28.)  This decision is discussed in more detail below.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on June 3, 2008 (R. 5-7), nearly 16 months after her request was made, and this appeal followed.  Thus, the ALJ's decision became the final administrative decision, and this case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

III.   ANALYSIS

A.   The ALJ's Decision

The ALJ found at step one that Plaintiff met the insured requirements of the Act through June 30, 2005.  (R. 22.)  He also found that Plaintiff had not engaged in substantial gainful activity since November 1, 2002, her alleged onset date.  (*Id.*)

At step two, the ALJ determined that Plaintiff had the following severe impairments: lumbar spine disorders, headaches, and obesity.  (R. 22.)  He "did not find sufficient credible medical evidence to support" finding severe impairments from depression, anxiety or asthma.  (*Id.*)  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 24.)

The ALJ then found that Plaintiff has the residual functional capacity ["RFC"] "to perform the full range of light work." (R. 25.) The ALJ rejected the findings of the treating physician who opined that Plaintiff was totally unable to work. (*Id.* 25-26.) He also did not give weight to the agency assessments of mental and physical functional limitations. (*Id.*) The ALJ concluded on the RFC issue:

> I find that the weight of the credible evidence supports finding that the claimant has the capacity for the full range of light work. I limit her to light work due to the history of abdominal surgeries with possible residual pain from adhesions . . . and because of the evidence of back pain and headaches, and primarily because of her obesity and complications of obesity. Given the level of claimant's credibility, I cannot reasonably accept any other limitations on a permanent ongoing basis during the alleged period of disability through the present.

(*Id.*)

At step four, the ALJ found that Plaintiff has no past relevant work, and also found that transferability of job skills is not an issue. (R. 27.) At step five, the ALJ found that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform as directed by Medical-Vocational Rule 202.20. (*Id.*)

B. Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of

evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      C.      <u>Whether the ALJ's Decision is Supported by Substantial Evidence</u>

Plaintiff argues that the ALJ erred in failing to give appropriate weight to the opinions of her treating physicians. She also argues that the ALJ erred by way of his misapplication of the Grids, by failing to properly determine Plaintiff's RFC and by not articulating her work-related abilities on a function-by-function basis. Further, it is argued that the ALJ erred in not evaluating the effects of Plaintiff's non-exertional limitations on her RFC, and in finding that work is available to Plaintiff in significant numbers. Finally, it is argued that the Appeals Council's decision to deny review was arbitrary and capricious because the Council failed to fully review the ALJ hearing record, failed to grant review despite new and material evidence, and failed to fulfill its statutory duty to discuss the evidence relative to its determination.

      1.      <u>Whether the ALJ Erred in Assessing the Medical Evidence and the Treating Physicians' Opinions</u>

As Plaintiff notes, Dr. Mawhorter has been her treating physician for a number of years. (R. 834.) Dr. Mawhorter opined that Plaintiff suffers from severe medical and psychological conditions, including severe abdominal and pelvic adhesive disease;

-4-

urethral stenosis; debilitating depression and anxiety; motility-related dyspepsia with bile gastritis and gastroesophageal reflux; chronic back pain; chronic and frequently recurring migraine headaches; asthma; impaired intellectual functioning; metabolic syndrome, manifested by impaired glucose intolerance and obesity; and obstructive sleep apnea, with nocturnal hypoxemia.  (*Id.* 834-39, 271, 717-22.)  Dr. Mawhorter recites in detail the multiple functional limitations that result from these conditions (*id.* 717-21), and concludes that they render Plaintiff "completely disabled as to performing any type of gainful work."  (*Id.* 271-72, 717-22, 834-39.)

Among other things, Dr. Mawhorter found that as a result of Plaintiff's physical and mental impairments, Plaintiff would miss four or more days from work, she would lose at least one hour or more of productivity per day from work, and her standing/ walking were impaired.  (R. 717-21.)  She also found that Plaintiff had extensive functional limitations due to her mental impairments, including moderate, marked or extreme limitations in understanding and memory, sustained concentration and pace, social interaction and/or adaptation.  (*Id.* 719-22.)

The ALJ gave "no significant weight to the treating physicians' assessment of physical (B12F) and mental capacity (B13F)."  (R. 26.)  He found that Dr. Mawhorter's "assessment of functional limitations based on medical and mental problems represent extensive complaints and allegations, but are not reflected in the objective medical evidence and do not show significant ongoing treatment to justify the opinion that these present significant ongoing mental or medical conditions such as to justify the extreme limitations described by the treating doctor."  (*Id.*)  I find that the ALJ erred in his treatment of the opinions of Plaintiff's treating physician.

I first note that it is unclear what weight the ALJ actually gave to Dr. Mawhorter's opinions.  While he says he gave the opinions "no significant weight", it appears that he did not give them any weight.  At the very least this is unclear. and the ALJ erred on this issue.  As noted by the Tenth Circuit, "'an ALJ must give good reasons . . . for the weight assigned to a [medical providers'] opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'"  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted).  In *Robinson*, the court found error where "it [wa]s obvious from the ALJ's decision that he did not give [a doctor's] opinion controlling weight" but "the ALJ never expressly stated that he was not affording it controlling weight."  *Id.* at 1083.

I also find that the ALJ did not adequately weigh the treating physician's opinions and findings.  An ALJ is "required to give controlling weight to a treating physician's opinion about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and any physical or mental restrictions, if 'it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record.'"  *Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir. 1995) (quotation omitted).  In other words, "[a] treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."  *Goatcher v. United States Dep't of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994).  An ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Id.* at 290.

"A treating physician's opinion may be rejected if his conclusions are not supported by specific findings." *Castellano v. Sec'y of Health and Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).  The ALJ appeared to based his decision, at least in part, on this basis and/or on the fact that the objective medical evidence did not support Dr. Mawhorter's opinions.  (R. 26.)  However, the treating doctor's findings were supported by specific findings, as indicated in her medical records which are quite extensive.  (*Id.* 178-236).  A doctor's statements about a patient's condition or impairments "are specific medical findings" which the ALJ errs in rejecting in the absence of conflicting evidence.  *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).  In *Washington*, the Tenth Circuit held that it was error to reject the opinions of medical providers because of the lack of "results or diagnostic tests of medical findings which led them to their conclusion" since the finding that the plaintiff's condition deteriorates under stress is a specific medical finding.  *Id.*  The ALJ made the same legal error in this case.

Further, Dr. Mawhorter issued a supplemental opinion in September 2007 which was submitted to and considered by the Appeals Council.  (R. 5, 8.)  This new evidence is "part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence."  *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  In that opinion, Dr. Mawhorter made clear that her opinions about Plaintiff's medical and psychological problems were based upon objective medical evidence, including review of test results, emergency room documents, reports and clinic notes, specialists' reports and her own clinical experience with Plaintiff.  (R. 834.)

Additional treating specialists' reports confirm Dr. Mawhorter's assessment of Plaintiff's multiple medical and psychological problems and limitations (R. 703, 830-831), which were not properly considered by the ALJ.  The only doctors that did not fully support Dr. Mawhorter's opinions were the agency physicians.  However, when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around.  *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988)).  The ALJ appeared to disregard this rule.

Further, when an ALJ decides that a treating physicians' opinions are not dispositive and not entitled to controlling weight, that does not allow him to reject their opinions outright.  *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004).  Instead, their opinions are "'still entitled to deference and [should be] weighed using all of the [relevant] factors.'"  *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).  The ALJ erred in that his opinion did not reflect that he gave these reports deference and weighed them, that he gave consideration to what "lesser weight the opinion[s] should be given", or that he sufficiently discussed the relevant factors set out in [42 U.S.C.] § 404.1527.  *Id.*

The ALJ also did not consider the fact that Dr. Mawhorter's opinions regarding Plaintiff's mental impairments and functional limitations as a result of same were substantiated by consultative examiner Dr. Madsen (R. 243) and even to some degree by the state agency physician.  (*Id.* 262, 266-67.)  Indeed, there does not appear to be any medical evidence in the record to support the ALJ's findings that Plaintiff's mental impairments are not severe at step two and that she does not have functional imitations

-8-

which impact the RFC.  The only question from the record appears to be the degree of

those impairments—whether they render Plaintiff completely disabled or whether they

merely impact the scope and type of work that Plaintiff can do.

Even a moderate impairment as found by the state agency physician is not the

same as no impairment at all.  *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).  In

*Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007), the

ALJ's RFC did not include medical findings that the claimant had marked difficulties in

certain areas and moderate impairments in others.[1]  The hypothetical question that the

ALJ relied on also did not include these impairments.  The Tenth Circuit remanded with

instructions to remand to the agency for additional proceedings.  *Id.*  In so doing, it held:

> An ALJ is not entitled to pick through an uncontradicted medical opinion,
> taking only the parts that are favorable to a finding of nondisability.
> Although ... the ALJ is entitled to resolve any conflicts in the record, the
> ALJ did not state that any evidence conflicted with [the treating
> physician's] opinion or mental RFC assessment. So it is simply
> unexplained why the ALJ adopted some of [the] restrictions but not others.
> We therefore remand so that the ALJ can explain the evidentiary support
> for his RFC determination.

*Id.*

Based on the foregoing authority, the ALJ erred in not considering the functional

limitations imposed by Plaintiff's mental impairments, as found by both the treating

physician and the state agency physician, and whether these limitations impact

---

[1]  Citations to this and other unpublished opinions in this Order are made because I find that the
opinions have persuasive value with respect to material issues that have not been addressed in a
published opinion.

Plaintiff's ability to do light work.  This also requires that the case be remanded, as acknowledged by the Commissioner.  (Def.'s Resp. Br. at 5-6.)

The reason that the ALJ chose not to give any weight to the agency assessment of mental limitations is also not supported by substantial evidence.  He based his decision on "the claimant's propensity to allege or exaggerate symptoms and because the examining psychologist . . . relied entirely on the claimant's statements and allegations and assumes good effort was made by the claimant during the mental status examination, which is not a valid assumption in light of the claimant's willingness to demonstrate invalid symptoms . . . . "  (R. 26.)

First, the reference to Plaintiff's "propensity to allege or exaggerate symptoms" or "willingness to demonstrate invalid symptoms" was purportedly based on one reference in the record where an emergency doctor questioned whether Plaintiff was malingering as to her asthma.  (R. 248.)  However, an opinion by a doctor in an emergency room setting with no background as to Plaintiff's impairments is not sufficient evidence to overcome the substantial and voluminous medical evidence supporting the existence of Plaintiff's psychological impairments.  Further, the ALJ may not "'pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.'"  *Carpenter v. v. Chater*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quoting *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)).

Moreover, the emergency room doctor's statements do not relate to Plaintiff's mental impairments and are thus not a basis for the ALJ to reject limitations due to those impairments, which were documented by both the treating doctor and by the state agency psychologist.  The ALJ was improperly substituting his own judgment for that of

the physicians, which is clear error.  *See Langley*, 373 F.3d at 1121 (an ALJ may not

reject a physician's opinion based on his own credibility judgments, speculation, or lay

opinion); *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996) (an ALJ is not

entitled to reject a doctor's opinions without adequate justification or to substitute his

own medical judgment for that of mental health professionals).  Further, while the ALJ

concluded that "for the most part the depression and anxiety is ignored in the records"

(R. 24), this is simply not accurate.  (*See Id.* at 179, 182, 186, 192, 223, 226, 241-43,

272, 287, 290, 300, 315, 350, 581, 717, 720-22, 724, 726, 735, 753, 755, 760, 790, 804,

815, 821, 830-831, 835-83.)

   To the extent that the ALJ rejected the findings of the state agency physician or

treating physician Dr. Mawhorter because he felt they were relying on Plaintiff's

subjective complaints, this is also error.  The practice of psychology is necessarily

dependent, at least in part, on a patient's subjective statements . . . . [t]he ALJ cannot

reject [a medical provider's] opinion solely for the reason that it was based on [the

claimant's] responses because such rejection impermissibly substitutes [the ALJ's]

judgment for that of [the medical provider]."  *Thomas v. Barnhart*, No. 04-7141, 2005

WL 2114163, at *4 (10th Cir. Sept. 2, 2005); *see also Garcia v. Barnhart*, No. 05-2322,

2006 WL 1923984, at *3 (10th Cir. July 13, 2006)*; Langley*, 373 F.3d at 1121.  The

record in this case does not support a finding that the medical providers' opinions were

based on Plaintiff's subjective complaints alone.  Instead, it appears that their opinions

were based on their examination of the Plaintiff and/or their treatment relationship.  *See*

*Thomas*, 2005 WL 2114163, at *4 ("'a psychological opinion . . . 'may rest either on

observed signs or on psychological tests.'") (quotation omitted).

-11-

Further, the ALJ improperly chose to reject the state agency physician's findings as to Plaintiff's physical limitations that she should avoid exposure to dust, fumes, etc. due to her asthma because of his belief that Plaintiff was malingering.  (R. 26.)  In fact, the ALJ appeared to make his entire RFC finding based on his assessment of Plaintiff's credibility, not based on any medical evidence or other evidence in the record.  (*Id.*)  However, an ALJ cannot reject a medical opinion based on his own lay opinion regarding credibility.  *See Langley*, 373 F.3d at 1121 (although the court "may not second-guess an ALJ's credibility judgments, such judgment by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record'") (quotation omitted).

This is true even as to the RFC finding.  While the RFC is an administrative issue reserved to the Commissioner, this does not give the ALJ carte blanche authority to ignore the medical evidence and make up his own RFC based on credibility judgments.  Instead, an opinion by a treating physician regarding functional limitations is entitled to substantial weight.  *See Cagle v. Astrue*, No. 07-5107, 2008 WL 506289, at *4 (10th Cir. Feb. 25, 2008).  In other words, in assessing RFC, the ALJ "must defer to a treating physician's medical opinions about the nature and severity of an applicant's impairments, including symptoms, diagnosis and prognosis, what an applicant is capable of doing despite the impairment, and the resulting restrictions."  *Ellis v. Barnhart*, 392 F.3d 988, 995 (8th Cir. 2005) (citing 20 C.F.R. § 404.1527(e)(2)).

In this case it is unclear what evidence, if any, the ALJ relied on in connection with his RFC, but it certainly did not appear to be based on the medical evidence.  In *Moon v. Barnhart*, No. 04-7130, 2005 WL 3446576, at *2-3 (10th Cir. Dec. 16, 2005),

-12-

the Tenth Circuit held that a remand was appropriate where "the ALJ never specified what he believed the credible medical evidence to be, either for the purpose of rejecting the doctors' RFC assessments or for the purpose of supporting his own finding" and where the court was thus unable to determine what evidence the ALJ relied on in connection with the RFC.

To the extent that the RFC may have been based on the state agency physicians' opinions, I agree with Plaintiff that the ALJ chose to disregard their opinions that supported his disability and focus only on those findings that supported his finding that Plaintiff was not disabled. This type of selective application of the evidence is not proper. Further, findings of a non-treating physician such as a state agency physician are of "suspect reliability" when based upon limited contact and examination of the Plaintiff. *McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002). If the ALJ chooses to rely on the opinion of a state agency physician who did not examine Plaintiff, the physician's "opinions must themselves find adequate support in the medical evidence". *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at * 3 (10th Cir. Dec. 8, 2004).

From the foregoing, it should be apparent that I view the ALJ's credibility analysis "with a skeptical eye". *See Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983). The ALJ's credibility findings appear to be conclusory, based on a selective application of the evidence and/or an improper attempt to discount findings by the medical sources. "'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). "However,

-13-

'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Id.* (quotations omitted). Here, the ALJ's decision is replete with findings about credibility that do not appear to be based on substantial evidence. (*See, e.g.,* R. at 23, 26.)  On remand, the Commissioner must reassess Plaintiff's credibility and her subjective complaints.

The errors described above in connection with the ALJ's improper attempt to overcome the medical evidence through his credibility findings also impact the ALJ's findings at step two and the findings regarding Plaintiff's nonexertional impairments, such as fatigue and pain.  As to step two, I previously found that there does not appear to be any medical evidence in the record to support the ALJ's findings that Plaintiff's mental impairments are not severe at step two.  Indeed, the ALJ's opinion reflects that he essentially ignored the medical evidence which did exist and made an improper lay judgment that Plaintiff's depression and anxiety were not severe.  (R. 24.)  The ALJ appeared to make this same error in connection with Plaintiff's asthma.  Further, as the Commissioner notes, the ALJ needs to determine whether Plaintiff's other impairments, including her chronic pain, swelling, numbness, and sleep difficulties, are severe.  (*See* Def.'s Resp. Br. at 5.)

On remand, then, the Commissioner must properly consider and weigh the medical evidence and redetermine what impairments are severe.  In so doing, it must be kept in mind that "case law prescribes a very limited role for step two analysis."  *Lee*, 2004 WL 2810224, at *2.  "Step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'"  *Id.* (quotation omitted).  "While 'the mere presence of a

condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132

F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of

impairment to move on to further steps in the analysis." *Id.* (quoting *Langley*, 373 F.3d

at 1123).

As to nonexertional impairments to be considered in connection with Plaintiff's

RFC, the record contains ample evidence of chronic pelvic and abdominal pain radiating

into lower back pain.  This pain appears to be due to a severe abdominal and pelvic

adhesive disease (R. 271-72, 717-19, 720-22, 830, 834-39), thus demonstrating that

there is objective medical evidence of a  pain-producing impairment.  *See Musgrave v.*

*Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992).[2]  Further, there does not appear to be

substantial evidence of record enabling the ALJ to find that Plaintiff's pain is insignificant

or that she is malingering.[3]

Complaints of pain cannot be dismissed as incredible merely because they stem

in part from a psychological abnormality, so long as the abnormality is shown by

"medical signs and findings, established by medically acceptable clinical or laboratory

diagnostic techniques. . . . '"  *Teter v. Heckler*,  775 F.2d 1104, 1106-07 (10th Cir.

1985). (quoting 42 U.S.C. § 423(d)(5)(A)).  Further, they cannot be dismissed merely

because there are not objective medical tests that substantiate the pain.  *Turner v.*

---

[2]  While the Commissioner cites the record to prove that Plaintiff's back pain is not supported by
the x-rays, the pain appears to be primarily due to her abdominal and pelvic adhesive disease and urethral
stenosis, not her lumbar back problem.

[3]  As noted above, the only evidence in the record of malingering was a comment in an
emergency room visit by a doctor who had not treated Plaintiff who questioned whether she was
malingering as to her claim of asthma.  That doctor did not address the pain issue.  All of Plaintiff's treating
physicians, however, appeared to conclude that Plaintiff's complaints of pain were real.

*Heckler*, 754 F.2d 326, 330 (10th Cir. 1985) ("the law is clear that subjective pain need not be shown to have an objective physical origin to be disabling").  The ALJ appeared to violate these rules.  Further, the ALJ failed to consider Plaintiff's efforts to alleviate the pain and the other factors that must be considered in assessing pain.  *Carpenter*, 537 F.3d at 1268.

There is also record evidence that Plaintiff needs to urinate frequency, needs daily rest periods due to pain and fatigue, and has other impairments including motility related dyspepsia, with bile gastritis and gastroesphageal reflex, sleep apnea and headaches which may result in days lost from work, sitting and standing limitations, impaired intellectual functioning and/or a learning disability, and other functional impairments related to both her mental and physical conditions.  (R. 834-39, 242-43, 271-72, 717-12.)  All of these need to be properly considered on remand.

Further, I note that at steps two and three the ALJ considered Plaintiff's impairments individually to determine whether they were sufficiently severe to limit her ability to do basic work activities.  This was error, as even the Commissioner acknowledges.  (Def.'s Resp. Br. at 5.)  On remand, the step two analysis "must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two].'"  *Carpenter*, 537 F.3d at 1266 (quoting *Langley*, 373 F.3d at 1123-24).  This would include, for example, an analysis of the combined effect of Plaintiff's pain and other non-exertional limitations.  This analysis must also be done in connection with the RFC.  *See Campbell v. Bowen*, 822 F.2d 1518 (10th Cir. 1987).

-16-

In assessing Plaintiff's RFC on remand, the Commissioner must keep in mind that RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  SSR 96-8p(1), 1996 WL 374184, at *1; *see also Haga*, 482 F.3d at 1208 (citing 20 C.F.R. § 416.945(c)).  A regular and continuing basis" means "'8 hours a day, for 5 days a week, or an equivalent work schedule,' S.S.R. 96-8p, 1996 WL 374184, at *2, and to 'respond appropriately to supervision, coworkers, and customary work pressures in a routine work setting,' S.S.R. 86-8, 1996 WL 68636, at *5."  *Haga*, 482 F.3d at 1208 (quotation omitted).

Thus, "'[a] finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can *hold* whatever job he finds for a significant period of time.'"  *Washington*, 37 F.3d at 1442 (emphasis in original) (quotation omitted).  Should the Commissioner determine that additional medical evidence needs to be obtained from the medical providers on this or any other issue, such additional evidence shall be requested and received.

        2.     <u>Whether the ALJ's Conclusion at Step Five is Supported by Substantial Evidence</u>

Since I am remanding this case for a reassessment of all the medical evidence and its impact on steps two and three and Plaintiff's RFC, the findings at step five will also need to be reassessed.  I note, however, that given Plaintiff's pain and other nonexertional limitations documented in the record, including functional limitations due

to Plaintiff's mental impairments, reliance on the Grids was inappropriate.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487-88 (10th Cir. 1993); *Hargis v. Sullivan*, 945 F.2d 1482, 1490 (10th Cir. 1991).  On remand, the Commissioner shall obtain vocational testimony to determine whether work exists in the national economy that Plaintiff can perform with her exertional and non-exertional impairments.

        3.     <u>Whether the Appeals Council Erred in Connection With Its Decision to Deny Review</u>

Finally, Plaintiff argues that the Appeals Council's decision to deny review was arbitrary and capricious and contrary to its regulations because the Council failed to fully review the ALJ hearing record before denying review.  Specifically, Plaintiff asserts that where, as here, the Appeals Council has received new and material evidence, it is required to evaluate the entire hearing record, including that new and material evidence.

Turning to my analysis, I first note that the two regulations initially cited by Plaintiff, 20 C.F.R. §§ 404.976(b) and 404.970(b), appear to apply when the Tenth Circuit has agreed to exercise full review of the appeal, not when it declines review as in this case.  *See Gomez v. Sullivan*, 761 F. Supp. 746, 749 (D. Colo. 1991).  However, 20 C.F.R. § 404.970(b), cited in the reply brief, does appear to support Plaintiff's argument. It states that if new and material evidence is considered, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted" and that it "will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  *Id.*  This regulation seems well reasoned in that it would be difficult, if not impossible, for the Appeals Council to determine whether the ALJ's findings were contrary to the evidence

of record if it chose not to review the entire record.  *See Gomez*, 761 F. .Supp. at 750

("It is impossible for the Appeals Council to conclude that a decision denying benefits is

supported by substantial evidence without even looking at the extent and content of the

hearing testimony.").  I find that this failure of the Appeals Council to comply with its

regulatory requirements is another basis for remand.[4]

IV.    CONCLUSION

        Based upon the errors described above, I find that this case must be reversed

and remanded to the Commissioner for further fact finding and analysis.  While I have

considered Plaintiff's alternative request for an award of benefits, I find that a remand is

appropriate based on the additional fact finding that must be conducted.  It is therefore

        ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further factfinding and a rehearing pursuant to sentence four in 42 U.S.C. § 405(g).

        Dated September 21, 2009

                                    BY THE COURT:


                                    s/ Wiley Y. Daniel
                                    Wiley Y. Daniel
                                    Chief United States District Judge

---

        [4]  While Defendant argues that this Court does not have jurisdiction over this issue, I disagree.
The very case relied on by Defendant, *Browning v. Sullivan*, 958 F.2d 817, 822-23 (8th Cir. 1992),
supports my finding.  The Eighth Circuit in *Browning* distinguished a review of whether the Appeals
Council complied with the procedural requirements of the regulation, which the court has jurisdiction over,
from a review of the Appeals Council's non-final substantive decision to deny review, which the court does
not have jurisdiction over.  *Id.* at 822-23 (citing *Williams v. Sullivan*, 905 F.2d 214 (8th Cir. 1990)).  Here, I
have jurisdiction to remand on this issue because I find that the Appeals Council failed to comply with the
procedural requirements of 20 C.F.R. § 404.970(b).